

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

FEB 10 2020

RICK WARREN
COURT CLERK

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

ABAB, INC., an Oklahoma Corporation, and )
AHMAD BAHREINI, )
)
Plaintiffs, )
)
vs. ) Case No. CJ-2020-788
)
CITY OF MIDWEST CITY, )
HEATHER POOLE, in her Official Capacity as )
City Prosecutor and/or Municipal Counselor, and )
Individually, )
CHRISTINE BRAKEFIELD, in her Official )
Capacity as Chief Building Official and Individually, )
DEREK COLQUITT, in his Official Capacity as )
Building Inspector, and )
DUANE HELMBERGER in his Official Capacity )
as Fire Marshall and Individually. )
)
Defendants. )

## PETITION

COME NOW the plaintiffs, ABAB, Inc., an Oklahoma corporation, and Ahmad Bahreini, by and through their attorney, Danny K. Shadid, and, for their causes of action against the defendants, jointly and severally, allege and state as follows:

1. ABAB, Inc., is an Oklahoma Corporation with its principal place of business in Oklahoma County, Oklahoma.

2. Ahmad Bahreini is an individual residing in Oklahoma County, Oklahoma, and is the president and primary principal of ABAB, Inc.

3. The real properties that are the subject of this lawsuit are located at 6801 Reno Ave., and 6777 East Reno Ave., Midwest City, Oklahoma County, Oklahoma.

4. The real property located at 6801 East Reno Ave. is a shopping mall and surrounding parking area collectively known as Heritage Park Mall. The real property located at 6777 E. Reno

EXHIBIT 1

Ave., is the building and surrounding parking formerly occupied the Montgomery Wards Department Store (hereafter, "Montgomery Wards") and which is immediately adjacent to Heritage Park Mall.

5. At all pertinent times, Heritage Park Mall and the Montgomery Wards building were and continue to be closed to the public.

6. ABAB, Inc., was at all pertinent times and is the owner of the property known as Heritage Park Mall. Ahmad Bahreini was at all pertinent times and is the owner of the property known as the Montgomery Wards building.

7. Defendant City of Midwest City is a duly constituted municipality and political subdivision of the State of Oklahoma.

8. Defendant Heather Poole was at all pertinent times either a City Prosecutor and/or Municipal Counselor of the City of Midwest City. Defendant Poole at all pertinent times acted outside the scope of her position as City Prosecutor, but always acted under color law. Defendant Poole is sued in her official capacity and individually.

9. Defendant Christine Brakefield was, at all pertinent times, the Chief Building Official of the City of Midwest City. Defendant Brakefield is sued in her official capacity as Chief Building Official for the City of Midwest City and individually.

10. Defendant Duane Helmberger is the current Fire Marshall of the City of Midwest City. Defendant Helmberger is sued in his official capacity as Fire Marshall for the City of Midwest City and individually.

11. Defendant Derek Colquitt is a building inspector with the City of Midwest City and is sued in his official capacity.

12. For the past several years, the plaintiffs have been engaged in renovating Heritage Park Mall and Montgomery Wards. The plaintiffs have been conducting and paying for the

renovations from their own funds, and have invested millions of their own dollars into the said renovations.

13. During mid-2017, the City of Midwest City and defendant Christine Brakefield embarked upon an unlawful governmental campaign, under the color of state law, to target the plaintiffs with respect to their ownership and peaceful possession of Heritage Park Mall and the Montgomery Wards building.

14. In December, 2017, the current municipal counselor of the City of Midwest City, Heather Poole, was the "City Prosecutor," and joined into the campaign against the plaintiffs, under color of state law, with respect to the plaintiff's ownership and peaceful possession of Heritage Park Mall and the Montgomery Wards building.

15. From mid-2017, through the present, the City of Midwest City, at the direction of defendants Poole and/or Brakefield, issued scores of alleged environmental and building/fire code violations pertaining to Heritage Park Mall and Montgomery Wards when the buildings were not open to the public, but rather were only being repaired and improved by the plaintiffs and their work crews. They issued the said citations in bad faith with the intent to target and harass the plaintiff's, and with the further intent to obstruct the plaintiff's from performing renovations on the real properties.

16. On February 9 and June 28, 2018, defendant Poole, while acting as City Prosecutor, personally attended and directed purported environmental and code inspections at Heritage Park Mall and Montgomery Wards. In so doing, she acted outside the scope of her function as a prosecutor and personally directed the targeted campaign against the plaintiffs regarding Heritage Park Mall and Montgomery Wards. Defendant Poole was on site to conduct and direct the aforesaid inspections for a period of approximately four (4) hours on both occasions.

17. Defendant Poole's directing of purported environmental and code inspections was outside the scope as her function of a City Prosecutor and had never been performed by a City Prosecutor prior to that time. Defendant Poole's direction of environmental and code inspections was conducted under color of state law.

18. On February 9 and 14, 2018, Midwest City code inspectors, at the direction of defendants Poole and Brakefield, issued dozens of alleged code and environmental and Code Citations which, according to the Citations, occurred on the respective dates set forth thereon. However, inspections never happened on those dates. Defendants Poole and Brakefield directed inspectors to issue Citations containing false information.

19. Defendants Poole and/or Brakefield directed City inspectors to place additional information on the aforesaid Citations which was not within the norm of the inspectors' usual course of conduct and was part of the specific targeted campaign against the plaintiffs with regard to Heritage Park Mall and Montgomery Wards, and all under color of law.

20. Trial was held on the aforesaid Citations in the Municipal Court of the City of Midwest City, a court not of record, on July 16 and September 25, 2018. That Court, the Honorable David Howell presiding, acquitted the plaintiff on nine (9) Citations and ruled in favor of the defendant City of Midwest City on the other Citations. Those rulings are of no violation at present, in as much as those Citations are now before the District Court of Oklahoma County for trial *de novo*.

21. Subsequent to trial of the aforementioned Citations in the Municipal Court of Midwest City, and subsequent to the appeal for trial *de novo* in the District Court of Oklahoma County, the defendants continued their targeted campaign against the plaintiffs by issuing scores of new and duplicitous citations.

22. During 2017, the plaintiffs submitted at least three (3) formal Applications for building permits to the appropriate offices of the defendant City of Midwest City pertaining to Heritage Park Mall and/or Montgomery Wards. At those times, the City would not even accept the Applications, much less rule upon them. The defendant City's refusal to accept the Applications was part of the targeted campaign against the plaintiffs with regard to Heritage Park Mall and Montgomery Wards building. Refusal to accept the Applications was also under color of law.

23. During the Fall of 2017, the defendant City, through its Code and building officials, including defendant Brakefield and defendant Helmberger, participated in a group meeting with the plaintiffs. At that time, the defendant City, defendant Brakefield and defendant Helmberger stated to the plaintiffs that the plaintiffs could first complete renovations of the common area of the Mall, obtain a certificate of occupancy for the common area, and then obtain certificates of occupancy for successive areas referred to as "fire zones" within the Mall. In September, 2019, while defendants Brakefield and Helmberger were conducting an inspection at the Mall, the plaintiffs advised that the plaintiffs were ready to seek the certificate of occupancy for the common area of the Mall, as per the aforesaid representation at the meeting of the Fall of 2017. However, at that time the defendants, and specifically defendants Brakefield and Helmberger, told the plaintiffs that the City would now require a occupancy permit for the entire Mall, which contained 88 rental spaces, in order to allow even one (1) tenant to begin occupancy. This was contrary to the prior representations and assurances of the defendants, and has caused significant damage to the plaintiffs. This reversal of the defendants City, Brakefield and Helmberger was part of the defendants' targeted campaign to inhibit and prevent the plaintiffs from going forward with repairs and renovations to the real properties.

24. During the aforementioned municipal trials of July 16 and September 25, 2018, the fact that the City of Midwest City had refused to even accept Applications for a work permit from the plaintiffs was admitted by City representatives in open court.

25. Subsequent to the filing of a Petition for trial *de novo* on the remaining Citations to the District Court of Oklahoma County, the plaintiffs again sought to obtain certain permits from the City of Midwest City. In May, 2019, the plaintiffs made Application to the City of Midwest City for a work permit pertaining to electrical work. The City of Midwest City issued the work permit for electrical work. Thereafter, at the direction of defendant Brakefield and/or Poole, the defendants, Brakefield, Helmberger and/or Poole, caused the City of Midwest City to issue Citations for alleged violations of the electrical code. This was during the time that the electrical permits were in force so that work could be done to address the matters for which citations were issued. Subsequent thereto, upon a new City prosecutor filling the role previously occupied by Heather Poole, the Citations regarding the alleged violations of electrical codes were dismissed.

26. In January, 2019, defendant Poole, under color of law, wrongfully and in violation of Oklahoma law, sought and received a purported search warrant from the Municipal Court of Midwest City so as to allow building inspectors and law enforcement to officers conduct a search of Heritage Park Mall and Montgomery Wards. Title 11 O.S. 2011, §28-121, specifically provides that ***municipal courts of record*** are the ***only*** municipal courts in the State of Oklahoma that are authorized to issue search warrants. The City of Midwest City is not a municipal court of record and cannot issue a search warrant as a matter of law. However, at the behest of defendant Poole, the Municipal Court of the City of Midwest City did issue a search warrant in violation of State law.

27. On or about January 9 and 10, 2019, City Police Officers made contact with the plaintiff, and also spoke with plaintiff's counsel regarding the City's desire to execute the search warrant. The plaintiff did not allow execution of the search warrant.

28. Upon receiving notice that the City of Midwest City had obtained a search warrant, the plaintiff, through counsel, filed a Motion to Quash the search warrant on January 10, 2019.

29. Immediately following the filing of the aforementioned Motion to Quash search warrant, defendant Poole, in violation, of law, made direct contact with plaintiff Ahmad Bahreini in an attempt to intimidate and threaten him with further contempt of court proceedings, none of which could have happened under any circumstance. She did this when she knew full well that plaintiff Bahreini had counsel on the matter. She did this in bad faith, but under color of law.

30. Thereafter, defendant Poole filed an Application for Contempt Citation regarding the plaintiff's refusal to allow the aforesaid search. She did this when she knew, or should have known, that the City of Midwest City, as a municipal court not of record, had no authority to issue search warrants.

31. In September, 2019, defendant City of Midwest City, at the direction of defendant Brakefield and/or defendant Poole, issued another series of duplicitous alleged environmental violations.

32. Inspectors for the City of Midwest City, at the direction fo the defendants Brakefield and/or Poole, continue to harass the plaintiffs at with tempted inspections while Heritage Park Mall and Montgomery Ward's is not open to the public and while the plaintiffs are attempting to repair and renovate the facilities.

33. On January 14, 2020, the plaintiffs allowed, at the request of the City Fire Marshall Duane Helmberger, City Inspectors onto the property for what was supposed to be an opportunity for the City to see the continued progress regarding repairs and renovations. Immediately thereafter, the defendants sent to the plaintiffs written threats of further citations.

34. On January 17, 2020, at the direction of defendant Brakefield and/or Poole, the defendants, jointly and severally, sent a letter to the plaintiffs advising that the City was about to declare an emergency or unsafe conditions, and cut off all utilities to Heritage Park Mall and Montgomery Ward's. Yet, on the same day as the notice letter, and without actual notice, the defendants, and all of them, took steps to and did in fact cut off utilities to a significant portion of Heritage Park Mall. All of this was done in bad faith, under color of law, and in a concerted effort to target and discriminate against the plaintiffs and to prevent them from being successful in their attempts to repair and renovate Heritage Park and Montgomery Wards.

35. Defendant Colquitt authored the aforesaid notice letter of January 17, 2020, advising of his recommendation and action on the part of the defendant City to remove utilities from the real properties. This was while, in the same letter, defendant Colquitt openly acknowledged the progress which had been made by the plaintiffs with regard to the renovations to the real properties. The falsity and maliciousness of the defendants' actions are borne out by the fact that the defendants have never declared the real properties to be unsafe during the past years of renovations when the properties were in a worse condition, prior to the more recent renovations.

36. In recent months, defendant Brakefield has, personally, come to Heritage Park Mall with City Inspectors and stated to plaintiffs Bahreini and ABAB, Inc., that defendant Brakefield had in her possession and on her person a search warrant which was not produced and which was clearly

after the time that the first attempted and purported search warrant had failed and had been exposed as a violation of State law. Yet, defendant Brakefield continued to attempt to intimidate, threaten, target and harass the plaintiffs with the threat of an unlawful search warrant, all under color of state law.

37. The bad faith, maliciousness and intent of the defendants is reflected in the fact that the defendant City, at taxpayer expense, funded and commissioned, in 2016, a feasibility study to be conducted by Catylist Commercial for the "redevelopment" of the Heritage Park Mall and Montgomery Wards. The defendant City's has intended for the past many years to take the plaintiffs' real properties. The targeted campaign against the plaintiff's with respect to Heritage Park Mall and Montgomery Wards is pursuant to the defendant City's unlawful goal of taking the plaintiffs real properties.

38. On various occasions, individual city inspectors have openly stated that they would not have issued citations except for the directions of defendant Brakefield and/or Poole.

39. All of the defendants' actions were done under color of law.

40. All of the defendants' actions constituted a violation of the plaintiffs' civil rights under the Fourteenth Amendment to the United States Constitution in that the defendants have and continue to deny and take property from the plaintiffs without *due process of law* and in violation of the Equal Protection Clause of the Fourteenth Amendment.

41. The defendants, by cutting off utilities to the plaintiffs' property, have taken property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution, as incorporated and applied to the defendants via the Fourteenth Amendment to the United States Constitution.

42. As a result of the defendants' joint and several violations of the plaintiffs' civil rights and violations of Oklahoma law, the plaintiffs have suffered substantial economic damages in excess of $75,000.00, all in violation of 42 U.S.C. §1983.

43. The defendants continue to target, harass and exercise a discriminatory campaign against the plaintiffs. The defendant's continue to obstruct and inhibit the plaintiff's attempts to renovate the real properties.

44. The defendants' targeted campaign against the plaintiffs is discriminatory. The defendants have, for the many preceding years, openly failed and refused to issue citations, similar to those issued to the plaintiffs, to other owners of real property, and whose property has been in similar or far worse condition then that of the plaintiffs.

45. The defendants, jointly and severally, have deprived the plaintiffs of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and Article II, Section 7 of the Oklahoma Constitution. The defendants have further taken the plaintiffs' property without just compensation in violation of the Fifth Amendment to the United States Constitution, as made applicable to the defendants through the Fourteenth Amendment.

46. The actions of the defendants City, Brakefield, Poole, Helemberger and Colquitt have been willful, malicious, capricious, arbitrary, in bad faith and in reckless disregard of the rights of the plaintiffs. The actions of defendants Brakefield, Helmberger and Poole are so egregious that they should be made to suffer punitive damages so as to punish these defendants and set an example for others.

47. The plaintiff's hereby adopt and incorporated herein by reference each and every allegation set for the plaintiff's Application for Temporary Restraining Order and Temporary Injunction, filed contemporaneously herewith.

WHEREFORE, the plaintiffs respectfully pray the Court enter Judgment in favor of the plaintiffs and against the defendants, jointly and severally, for actual damages in excess of $75,000.00, together with costs and attorney fees. Further, the plaintiffs pray the Court enter Judgment in favor of the plaintiffs and against defendants Brakefield, Helberger and Poole for punitive damages, jointly and severally, in an amount in excess of $10,000.00. The plaintiff's further pray for temporary injunctive relief as per the plaintiff's Application for Temporary Restraining Order and for Temporary Injunction filed contemporaneously herewith.

Respectfully submitted,

Danny K. Shadid, OBA #8104
Of Counsel
RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS LAW FIRM
528 NW 12th Street
Oklahoma City, OK 73103
P: (405) 843-9909 | F: (405) 842-2913
E: DShadid@RiggsAbney.com